UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF INDIANA
INDIANAPOLIS DIVISION

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | No. 1:99-cr-00059-JMS-DML |
| | ) | |
| TERONE JOHNSON, | ) -06 | |
| | ) | |
| Defendant. | ) | |

**Entry Granting Motion for Compassionate Release**

On January 4, 2021, Defendant Terone Johnson—who is represented by retained counsel—filed a motion for compassionate release under § 603 of the First Step Act, which is codified at 18 U.S.C. § 3582(c)(1)(A)(i). Dkts. 301. In the motion, Mr. Johnson asks the Court to reduce his sentence to time served and to immediately release him. *Id.* The United States responded on January 8, 2021, dkt. 303, and Mr. Johnson filed a reply on February 26, 2021, dkt. 312. At the Court's direction, the United States also filed a surreply. Dkt. 316. The motion for compassionate release is ripe for the Court's consideration. For the reasons explained in this Entry, the motion is **granted**.

**I. Background**

A.  *Conviction and Sentencing*

In August 2000, the Court sentenced Mr. Johnson to 170 months of imprisonment and 5 years of supervised release after he pleaded guilty to one count of conspiracy to possess with intent to distribute and to distribute cocaine and cocaine base. Dkt. 185-1. Before sentencing, a Presentence Investigation Report ("PSR") was prepared. The PSR describes Mr. Johnson's offense conduct as follows:

Mr. Johnson supplied kilogram quantities of cocaine hydrochloride to other members of the conspiracy. Dkt. 315 at 6. Other members of the conspiracy then distributed the cocaine in Indianapolis. *Id.* at 7. During the course of the conspiracy, members of the conspiracy—including Mr. Johnson—possessed firearms, including assault rifles, semi-automatic machine guns, shotguns, pistols, and revolvers. *Id.* at 8. Mr. Johnson admitted that he was involved with 2-to-3.5 kilograms of cocaine in this matter, but the United States Probation Office concluded that he was responsible for the acquisition and distribution of more than 15 but less than 50 kilograms of cocaine. *Id.* at 9. On or about April 5, 1999, Mr. Johnson possessed 11 firearms at his residence, including multiple semi-automatic handguns and two shotguns. *Id.*

Mr. Johnson's conviction in this case represented his first felony conviction. *Id.* at 11–16. Prior to his conviction in this case, he had the following adult misdemeanor convictions: driving while suspended (1988), resisting law enforcement (1990), theft (1991), battery (1994), possession of marijuana (1993), and pointing a firearm and carrying a handgun without a license (1997). *Id.*

Mr. Johnson was released from the custody of the Bureau of Prisons ("BOP") in 2011 and began serving a term of supervised release on December 5, 2011. Dkt. 293 at 5–6. By all accounts, Mr. Johnson did very well on supervised release for about 3 years. *Id.* at 6. He found a job as a financial supervisor and was earning a good income. *Id.* He had good support from his wife, mother, and children. *Id.* Nonetheless, in December 2014, he was arrested and charge with various offenses in Ohio. *Id.* at 3. In August 2015, an Ohio state court convicted Mr. Johnson of drug trafficking and sentenced him to 6 years in prison. Dkt. 303-3. Later that month, Mr. Johnson returned to this Court for a hearing, during which he admitted to violating the terms of his supervised release. Dkts. 248, 312-2. He expressed remorse for his actions and explained that he had re-offended based on what he now understood was misplaced loyalty to people with whom he

had been incarcerated. Dkt. 293 at 8. The Court sentenced Mr. Johnson to serve 12 months and one day of imprisonment for the supervised release violations, to run consecutive to his sentence in the Ohio case. Dkts. 252, 312-2. The Court did not impose any additional term of supervised release. *Id.* The Court also recommended that Mr. Johnson be designated to a minimum-security BOP facility in Terre Haute, Indiana. *Id.* Mr. Johnson then returned to Ohio to complete his state sentence. He was released from state custody on August 21, 2020. Dkt. 303-3. During his incarceration in Ohio, Mr. Johnson completed a 2-year program in which he learned to train service dogs. Dkt. 301-2. After his release from state custody, he was returned to the custody of the United States Marshals Service ("USMS").

B.    *Current Incarceration and Medical Conditions*

Mr. Johnson is now 51 years old. On August 26, 2020, he was designated to serve his supervised release sentence at the BOP's Administrative Security Federal Medical Center in Springfield, Missouri ("MCFP Springfield"). Dkt. 303-4. As of January 8, 2021, the USMS reported that Mr. Johnson was "in transit" to MCFP Springfield and was being held at the Cimarron Correctional Facility in Cushing, Oklahoma ("Cimarron"). Dkt. 303 at 2. He was expected to arrive there "within days." *Id.* Nonetheless, as of the writing of this Order, more than two months have passed, and Mr. Johnson is still incarcerated at Cimarron.

As of January 7, 2021, the BOP has given Mr. Johnson a low security classification. Dkt. 303-2. Mr. Johnson's anticipated release date (with good-conduct time) is June 28, 2021— approximately three-and-a-half months from now. Thus, with good-conduct time included, he has served about two-thirds of the sentence imposed for his supervised release violations.

Upon his release, Mr. Johnson plans to live with his mother. Dkt. 301 at 6; dkt. 312 at 6. He has submitted a letter from a collision center in Indianapolis stating that the company will hire

him as an estimator upon his release. Dkt. 301-4. He has also submitted letters from two non-profit organizations stating that the organizations plan to allow Mr. Johnson to volunteer with them and provide mentoring services to at-risk youth. Dkt. 301-5. If he is released, Mr. Johnson hopes to help provide care for his mother and adult sister, both of whom are facing health challenges. Dkt. 312 at 6.

The United States concedes that Mr. Johnson is obese, with a Body Mass Index ("BMI") of 31.3. *See* dkt. 316 at 1; dkt. 312-1 at 7 (medical record dated 1/22/2021 giving height of 72 inches and weight of 231 pounds). The CDC (Centers for Disease Control and Prevention) recognizes that being obese is a condition that places individuals at increased risk of experiencing severe symptoms if they contract COVID-19. *See* https://www.cdc.gov/coronavirus/2019-ncov/need-extra-precautions/people-with-medical-conditions.html (last visited Mar. 10, 2021). Mr. Johnson has also been diagnosed with asthma and has been prescribed medication to treat that condition. Dkts. 301-1, 312-1. The CDC has identified moderate-to-severe asthma as a condition that may increase the risk of severe COVID-19 symptoms. *See* https://www.cdc.gov/coronavirus/2019-ncov/need-extra-precautions/people-with-medical-conditions.html (last visited Mar. 10, 2021).

C.     *Conditions at Cimarron Correctional Facility*

As mentioned, Mr. Johnson is currently incarcerated at the Cimarron Correctional Facility in Cushing, Oklahoma. Although current data is not available to the Court, Mr. Johnson's counsel represents that counsel for the BOP told her that at least 509 inmates have tested positive for COVID-19 while in transit through Cimarron and that 468 inmates at Cimarron have been transported after testing positive and quarantining. Dkt. 312 at 5. Mr. Johnson also represents that

at least 50 inmates at Cimarron were taken to the COVID-19 section in the month of February 2021 and that at least 20 of those inmates came from his 120-inmate pod. *Id.*

## II. Discussion

Mr. Johnson argues that his increased risk of severe illness or death from COVID-19 creates an "extraordinary and compelling reason" justifying his compassionate release under 18 U.S.C. § 3582(c)(1)(A)(i). Dkts. 301, 312. He also contends that his desire to care for his mother and sister are additional extraordinary and compelling reasons warranting a sentence reduction. Dkt. 312 at 5. He further argues that a reduction of his sentence would not create a danger to the community or be inconsistent with the sentencing factors in 18 U.S.C. § 3553. *Id.* at 6–9.

In response, the United States admits that Mr. Johnson is obese and meets the CDC's identified risk factors for severe COVID-19 symptoms, dkt. 316 at 1, but contends that his obesity is not an extraordinary and compelling reason warranting release because obesity is very common and "the Court has consistently found that obesity presents an 'extraordinary and compelling reason' for release only when coupled with other severe pulmonary or heart conditions," *id.* at 2. It also contends that Mr. Johnson's asthma diagnosis does not increase his risk of severe COVID-19 symptoms because his asthma is only intermittent and not moderate-to-severe. *Id.* at 2; dkt. 303 at 6–7. In addition, it disputes that Mr. Johnson's family circumstances constitute an extraordinary and compelling reason warranting release. *Id.* at 2–3. Finally, the United States argues that Mr. Johnson would be a danger to the community if released. *Id.* at 3; dkt. 303 at 7–8.

The general rule is that sentences imposed in federal criminal cases are final and may not be modified. 18 U.S.C. § 3582(c). Under one exception to this rule, a court may reduce a sentence upon finding there are "extraordinary and compelling reasons" that warrant a reduction. 18 U.S.C. § 3582(c)(1)(A)(i). Before the First Step Act was enacted on December 21, 2018, only the Director

5

of the BOP could file a motion for a reduction based on "extraordinary and compelling reasons." Now, a defendant is also permitted to file such a motion after exhausting administrative remedies. *See* First Step Act of 2018, Pub. L.N. 115-391, 132 Stat. 5194, 5239 (2018). The amended version of the statute states:

> [T]he court, upon motion of the Director of the Bureau of Prisons, or upon motion of the defendant after the defendant has fully exhausted all administrative rights to appeal a failure of the Bureau of Prisons to bring a motion on the defendant's behalf or the lapse of 30 days from the receipt of such a request by the warden of the defendant's facility, whichever is earlier,[1] may reduce the term of imprisonment (and may impose a term of probation or supervised release with or without conditions that does not exceed the unserved portion of the original term of imprisonment), after considering the factors set forth in section 3553(a) to the extent that they are applicable, if it finds that—
>
> > (i) extraordinary and compelling reasons warrant such a reduction; or
> >
> > (ii) the defendant is at least 70 years of age, has served at least 30 years in prison, pursuant to a sentence imposed under section 3559(c), for the offense or offenses for which the defendant is currently imprisoned, and a determination has been made by the Director of the Bureau of Prisons that the defendant is not a danger to the safety of any other person or the community, as provided under section 3142(g);
>
> and that such a reduction is consistent with applicable policy statements issued by the Sentencing Commission . . . .

18 U.S.C. § 3582(c)(1)(A).

Congress directed the Sentencing Commission to "describe what should be considered extraordinary and compelling reasons for sentence reduction, including the criteria to be applied and a list of specific examples." 28 U.S.C. § 994(t). It directed that "[r]ehabilitation of the defendant alone shall not be considered an extraordinary and compelling reason." *Id.* Before

---

[1] The United States concedes that Mr. Johnson has exhausted his administrative remedies as required by § 3582(c)(1)(A). Dkt. 303 at 2 (citing dkt. 301-2).

passage of the First Step Act, the Sentencing Commission promulgated a policy statement regarding compassionate release under § 3582(c). U.S.S.G. § 1B1.13.

Section 1B1.13 sets forth the following considerations: First, whether "[e]xtraordinary and compelling reasons warrant the reduction" and whether the reduction is otherwise "consistent with this policy statement." U.S.S.G. § 1B1.13(1)(A), (3). Second, whether the defendant is "a danger to the safety of any other person or to the community, as provided in 18 U.S.C. § 3142(g)." U.S.S.G. § 1B1.13(2). Finally, consideration of the sentencing factors in 18 U.S.C. § 3553(a), "to the extent they are applicable." U.S.S.G. § 1B1.13.

As to the first consideration, Subsections (A)-(C) of Application Note 1 to § 1B1.13 identify three specific "reasons" that qualify as "extraordinary and compelling": (A) terminal illness diagnoses or serious conditions from which a defendant is unlikely to recover and which "substantially diminish[]" the defendant's capacity for self-care in prison; (B) aging-related health decline where a defendant is over 65 years old and has served at least ten years or 75% of his sentence, whichever is less; or (C) certain family circumstances (the death or incapacitation of the caregiver of the defendant's minor child or the incapacitation of the defendant's spouse or registered partner when the defendant would be the only available caregiver for the spouse or registered partner). U.S.S.G. § 1B1.13, Application Note 1(A)–(C). Subsection (D) adds a catchall provision for "extraordinary and compelling reason[s] other than, or in combination with, the reasons described in subdivisions (A) through (C)," "[a]s determined by the Director of the Bureau of Prisons." *Id.*, Application Note 1(D).

The policy statement in § 1B1.13 addresses only motions from the Director of the BOP. *Id.* ("Upon the motion of Director of the Bureau of Prisons under 18 U.S.C. § 3582(c)(1)(A), the court may reduce a term of imprisonment . . . "). It has not been updated since the First Step Act

7

amended § 3582(c)(1)(A) to address motions that are filed by prisoners. As a result, the Sentencing Commission has not yet issued a policy statement "applicable" to motions filed by prisoners. *United States v. Gunn*, 980 F. 3d 1178, 1180–81 (7th Cir. 2020). And, in the absence of an applicable policy statement, the portion of § 3582(c)(1)(A) requiring that a reduction be "consistent with the applicable policy statements issued by the Sentencing Commission" does not curtail a district court judge's discretion. *Id.* at 1180. Nonetheless, the Commission's analysis in § 1B1.13 can guide a court's discretion without being conclusive. *Id.* As to motions brought under the "catchall" provision in Subsection (D), district judges should give the Director of the BOP's analysis substantial weight (if he has provided such an analysis), even though those views are not controlling. *Id.*

Accordingly, the Court evaluates motions brought under the "extraordinary and compelling" reasons prong of § 3582(c)(1)(A) with due regard for the guidance provided in § 1B1.13 by deciding: (1) whether a defendant has presented an extraordinary and compelling reason warranting a sentence reduction; (2) whether the defendant presents a danger to the safety of any other person or to the community, as provided in 18 U.S.C. § 3142(g); and (3) whether the applicable sentencing factors in § 3553(a) favor granting the motion.

A.   *Extraordinary and Compelling Reasons*

Mr. Johnson does not suggest that Subsections (A)-(C) of Application Note 1 to § 1B1.13 provide him with an extraordinary and compelling reason warranting release. Instead, he asks the Court to exercise its broad discretion to find an extraordinary and compelling reason warranting release in this case. Dkts. 301, 308.[2]

---

[2]The parties agree that Mr. Johnson made an administrative request for relief to his warden, but it appears that the warden never responded or took a position as to whether extraordinary and compelling reasons exist in this case. *See* dkt. 301-2.dlt. 303 at 2. As a result, there is no opinion from the BOP to which the Court must give weight.

The Court concludes that Mr. Johnson has shown an extraordinary and compelling reason warranting release in this case. Mr. Johnson has a condition (obesity) that increases his risk of experiencing severe symptoms if he contracts COVID-19. He also suffers from asthma.[3] Moreover, he is incarcerated at an institution that has experienced many cases of COVID-19. As a facility that houses inmates while they are in transit, Cimarron also experiences a constant influx of new inmates, thereby constantly exposing it to potential new COVID-19 infections. Furthermore, the nature of prisons means that there is very little that inmates like Mr. Johnson can do to protect themselves once an outbreak begins. Notably, the United States frequently concedes that having a CDC-identified COVID-19 risk factor satisfies the "extraordinary and compelling" prong of § 3582(c)(1)(A)(i). *See, e.g.*, *United States v. Finan*, No. 1:17-cr-87-TWP-MJD-1, dkt. 145 at 13 (S.D. Ind. June 23, 2020) ("Therefore, because [the defendant] has established that he has a CDC-identified COVID-19 risk factor, the government does not contest that he has satisfied the 'extraordinary and compelling reason' prong of section 3582(c)(1)(A)(i)."); *United States v. Elmer,* No. 1:17-cr-113-JRS-TAB, dkt. 247 at 7 (S.D. Ind. June 17, 2020) ("[The defendant's] diabetes, during the COVID-19 pandemic, presents an extraordinary and compelling reason allowing for compassionate release."); *United States v. Sanders*, No. 3:06-cr-23-RLY-WGH-1, dkt. 31 at 6 (S.D. Ind. Oct. 26, 2020) ("The government concedes that the defendant has presented 'extraordinary and compelling circumstances,' in that he has at least one condition that

---

[3] The Court recognizes that Mr. Johnson's asthma may not be moderate-to-severe. This Court has, however, recognized that obesity combined with even mild asthma constitutes an extraordinary and compelling reason for a sentence reduction. *See United States v. Rivera*, No. 2:13-cr-00016-JMS-CMM-08, dkt. 681 at 5 (S.D. Ind. July 22, 2020). Thus, contrary to the United States' argument, the Court has not limited "extraordinary and compelling" findings to cases involving obesity plus "other severe pulmonary or heart conditions." Dkt. 316 at 2. *See also United States v. Vaughn*, No. 3:17-cr-22-RLY-MPB-07, dkt. 364 at 7 (S.D. Ind. Jan. 20, 2021) (finding extraordinary and compelling reason warranting release where defendant was obese with no other associated medical conditions); *United States v. Kelley*, No. 2:13-cr-16-JMS-CMM-4, dkt. 693 at 7 (S.D. Ind. Oct. 20, 2020) (finding extraordinary and compelling reason warranting release where defendant was obese but had no associated pulmonary or heart condition).

puts him at an increased risk of severe illness from COVID-19. . . . Specifically, he is obese."); *United States v. Bilyou*, No. 2:11-cr-9-JMS-CMM-6, dkt. 905 at 6 (S.D. Ind. Nov. 27, 2020) ("The government concedes that the defendant has presented 'extraordinary and compelling circumstances,' in that he has at least one condition that puts him at increased risk of severe illness from COVID-19."). Accordingly, the Court finds that Mr. Johnson has demonstrated an extraordinary and compelling reason warranting a sentence reduction.

Because the Court has concluded that Mr. Johnson's medical conditions combine with the risks posed by the COVID-19 pandemic to create an extraordinary and compelling reason warranting a sentence reduction, it need not decide whether Mr. Johnson's desire to care for his mother and adult sister presents an additional extraordinary and compelling reason warranting a sentence reduction.

B.   *Danger to any Other Person or the Community*

The Sentencing Guidelines provide that compassionate release is appropriate only where the "defendant is not a danger to the safety of any other person or to the community, as provided in 18 U.S.C. § 3142(g)." U.S.S.G. § 1B1.13(2). Section 3142(g) sets out the factors the Court must consider in determining whether a defendant should be detained pending trial. These same factors guide the Court's release determination at this juncture as well:

> **(g) Factors to be considered.**—The judicial officer shall, in determining whether there are conditions of release that will reasonably assure the appearance of the person as required and the safety of any other person and the community, take into account the available information concerning--
> **(1)** the nature and circumstances of the offense charged, including whether the offense is a crime of violence, a violation of section 1591, a Federal crime of terrorism, or involves a minor victim or a controlled substance, firearm, explosive, or destructive device;
> **(2)** the weight of the evidence against the person;
> **(3)** the history and characteristics of the person, including--
> > **(A)** the person's character, physical and mental condition, family ties, employment, financial resources, length of residence in the

>> community, community ties, past conduct, history relating to drug or alcohol abuse, criminal history, and record concerning appearance at court proceedings; and
> **(B)** whether, at the time of the current offense or arrest, the person was on probation, on parole, or on other release pending trial, sentencing, appeal, or completion of sentence for an offense under Federal, State, or local law; and
>
> **(4)** the nature and seriousness of the danger to any person or the community that would be posed by the person's release.

18 U.S.C. § 3142(g).

Mr. Johnson's original crime was extremely serious. He supplied kilogram quantities of cocaine to a drug trafficking organization and had 11 firearms in his home, underscoring the danger associated with his drug-dealing activities. The conviction that led to the revocation of his supervised release was also serious in that he traveled to Ohio to traffic illegal drugs while on supervised release. However, at this point, his original crime occurred more than two decades ago, and the offense that led to the revocation of his supervised release happened more than 6 years ago. Before his 2015 conviction, he had done very well with his supervised release—obtaining steady employment and not incurring any violations. During his state incarceration, he participated in a dog-training program. The United States has not presented any evidence suggesting that Mr. Johnson experienced discipline problems while in state custody or that he has incurred discipline since returning to the custody of the USMS. Underscoring the lack of danger Mr. Johnson presents, the BOP has assigned him a low security classification.

Upon release, Mr. Johnson plans to live with his mother, who will provide him with housing. Mr. Johnson also represents that he has found post-release employment. In addition, Mr. Johnson hopes to help provide care for his ailing mother and sister. The support of his family, the prospect of gainful employment, and the responsibility of helping to care for family members should help Mr. Johnson transition back to being a law-abiding member of the community.

Accordingly, pursuant to § 3142(g), the Court finds that Mr. Johnson does not presently pose a danger to any person or the community if his sentence is reduced to time served.

C.     *Section 3553(a) Factors*

The United States does not argue that the sentencing factors in § 3553(a) counsel against release, *see* dkts. 303, 316, and the Court agrees.

Section 3553(a) provides:

> **(a) Factors to be considered in imposing a sentence.**—The court shall impose a sentence sufficient, but not greater than necessary, to comply with the purposes set forth in paragraph (2) of this subsection. The court, in determining the particular sentence to be imposed, shall consider—
> **(1)** the nature and circumstances of the offense and the history and characteristics of the defendant;
> **(2)** the need for the sentence imposed—
> > **(A)** to reflect the seriousness of the offense, to promote respect for the law, and to provide just punishment for the offense;
> > **(B)** to afford adequate deterrence to criminal conduct;
> > **(C)** to protect the public from further crimes of the defendant; and
> > **(D)** to provide the defendant with needed educational or vocational training, medical care, or other correctional treatment in the most effective manner;
> **(3)** the kinds of sentences available;
> **(4)** the kinds of sentence[s] and the sentencing range established for--
> > **(A)** the applicable category of offense committed by the applicable category of defendant as set forth in the guidelines [issued by the Sentencing Commission . . . ;]
> **(5)** any pertinent policy statement guidelines [issued by the Sentencing Commission . . . ;]
> **(6)** the need to avoid unwarranted sentence disparities among defendants with similar records who have been found guilty of similar conduct; and
> **(7)** the need to provide restitution to any victims of the offense.

18 U.S.C. § 3553(a).

As recognized above, Mr. Johnson's conduct in this case (both the underlying criminal case and the supervised release violation) was extremely serious. But Mr. Johnson served about 12 years in the BOP for the underlying criminal offense, served more than 5 years in Ohio for the conduct that led to the revocation of his supervised release, and has served more than two-thirds

of the sentence associated with his supervised release violation. He also served approximately 3 years on supervised release. All of this amounts to a serious sanction that appropriately recognizes the seriousness of his conduct. Moreover, Mr. Johnson has apparently not caused discipline problems during his incarceration and has lined up post-release employment, suggesting that further incarceration is not needed to protect the public from future crimes he might commit. Finally, Mr. Johnson stands to be released in less than 4 months.

When combined with the risk Mr. Johnson faces from the COVID-19 pandemic, the Court finds that the § 3553(a) factors weigh in favor of reducing Mr. Johnson's sentence to time served. *See United States v. Ebbers*, No. S402-CR-11443 VEC, 2020 WL 91399, at *7 (S.D.N.Y. Jan. 8, 2020) (in evaluating motion for compassionate release, the court should consider whether the § 3553(a) factors outweigh the "extraordinary and compelling reasons" warranting compassionate release, and whether compassionate release would undermine the goals of the original sentence). Under the facts presented by this case, keeping Mr. Johnson imprisoned for another three-and-a-half months would be more than what is necessary to provide just punishment for Mr. Johnson's offenses.

### III. Conclusion

Pursuant to 18 U.S.C. § 3582(c), the Court finds that extraordinary and compelling reasons warrant a reduction of Mr. Johnson's sentence and his immediate release from imprisonment, that Mr. Johnson does not pose a danger to any other person or the community under the conditions of release, that the § 3553(a) factors support a reduction, and that his release from imprisonment is consistent with the Sentencing Commission's applicable policy statements. Therefore, the Court **GRANTS** Mr. Johnson's motion for compassionate release, dkt. [301], **ORDERS** that Mr. Johnson's sentence of imprisonment be reduced to **time served as of March 15, 2021,** and further

**ORDERS** the BOP to release Mr. Johnson by **4:00 p.m. on March 15, 2021.** The terms of the Judgment imposed on August 27, 2015 and docketed on September 3, 2015 (dkt. 252) otherwise remain unchanged. Finally, no later than **12:00 p.m. on March 12, 2021**, counsel for the United States is **ORDERED** to do the following: (1) transmit the AO248 Order to Mr. Johnson's custodian; and (2) file a notice with the Court confirming that transmission of the AO248 Order has occurred.

    **IT IS SO ORDERED.**

Date: 3/11/2021

Hon. Jane Magnus-Stinson, Chief Judge
United States District Court
Southern District of Indiana

Distribution:

All Electronically Registered Counsel